EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oriental Bank<br><br>Recurrente<br><br>v.<br><br>Registrador de la Propiedad de Arecibo, Hon. Frank Quiñones Vigo<br><br>Recurrido | Recurso Gubernativo<br><br>2022 TSPR 61<br><br>209 DPR ____ |

Número del Caso: RG-2021-0001

Fecha: 12 de mayo de 2022

Abogado de la parte recurrente:

    Lcdo. Alberto De Diego Collar

Registrador de la Propiedad:

    Hon. Frank Quiñones Vigo

Materia: Derecho Registral Inmobiliario - El cobro de aranceles no puede efectuarse de forma autómata ni en exceso de lo que dispone la ley, por lo que es parte de la función del Registrador de la Propiedad el atender reclamos sobre cuantías cobradas en exceso.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Oriental Bank<br><br>Recurrente<br><br>v.<br><br>Registrador de la Propiedad de Arecibo, Hon. Frank Quiñones Vigo<br><br>Recurrido | RG-2021-0001 | |

Opinión del Tribunal emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 12 de mayo de 2022.

En esta ocasión, corresponde a este Tribunal precisar los límites de la función de un Registrador de la Propiedad en el cobro de aranceles ante un mandato de cancelación emitido por un tribunal. En específico, luego de reiterar nuestra jurisdicción sobre el asunto a la luz de Firstbank Puerto Rico v. Registradora de la Propiedad, infra, debemos establecer cuál es el rol de un Registrador de la Propiedad que es confrontado con un reclamo de cuantías duplicadas en el total a pagar para la cancelación de ciertos gravámenes.

Por consiguiente, este Tribunal debe determinar si las funciones del Registrador de la Propiedad incluyen el discernir entre tales gravámenes y, de ser así, si le compete a este entender en la cuantía a pagarse. Comenzamos, pues,

con un recuento de los hechos que enmarcan la controversia ante nuestra consideración.

I

En el 2018, Oriental Bank salió favorecido en un procedimiento de ejecución de hipoteca sobre un inmueble sito en Arecibo.[1] El 4 de diciembre de 2018, se otorgó la Escritura Número Setenta (70) de Venta Judicial mediante la cual Oriental Bank adquirió la propiedad.[2] En consecuencia, Oriental Bank presentó ante el Tribunal de Primera Instancia, Sala de Arecibo, una <u>Solicitud para la cancelación de gravamen posterior</u>.

El 12 de diciembre de 2018, el Tribunal de Primera Instancia declaró con lugar la solicitud y, dos (2) días más tarde, emitió un <u>Mandamiento de cancelación de gravámenes posteriores</u> dirigido al Registrador de la Propiedad de la Sección Primera de Arecibo. Mediante este, el foro primario ordenó la cancelación de diez (10) gravámenes posteriores, a saber: siete (7) embargos a favor del Estado Libre Asociado de Puerto Rico (Estado), dos (2) embargos federales y el aviso de demanda instado por Oriental Bank.[3] Oriental Bank

---

[1] El caso civil de ejecución de hipoteca ante el Tribunal de Primera Instancia fue identificado con el alfanumérico CCD2016-0538, <u>Oriental Bank v. Fabio Andrés Román García, Sucesión de Myriam Borrero Bauzá</u>.

[2] Apéndice de <u>Recurso Gubernativo</u>, págs. 32-42.

[3] Íd., págs. 3-4.

presentó tal mandamiento ante el Registro de la Propiedad el 7 de febrero de 2019.[4]

El 27 de febrero de 2019, el Registrador de la Propiedad, Hon. Frank Quiñones Vigo (Registrador), emitió una Carta de Notificación mediante la cual identificó una falta en el documento presentado. En específico, señaló que no se pagó la cuantía correspondiente a la cancelación de los gravámenes.

En respuesta, Oriental Bank presentó un Escrito de Recalificación. Indicó que la notificación del Registrador no incluyó un desglose de los embargos sujetos al pago de aranceles, como tampoco la cuantía que debía pagarse por su cancelación. Arguyó, en lo pertinente, que los embargos referentes a las contribuciones sobre ingresos no pagados reflejaban certificaciones que repetían el principal de años previos, por lo que cada nueva entrada añadía el principal del año más reciente a la cuantía ya acumulada, más los intereses, multas y recargos. Razonó que procedía pagar solo por la cuantía del embargo más reciente.

El 17 de septiembre de 2020, el Registrador emitió una segunda Carta de notificación. En esta, desglosó los diez (10) asientos a cancelarse y las sumas a pagar por cada uno. Además, añadió que debían también consignarse los derechos correspondientes a la presentación del documento.

---

[4]Todo el trámite ante el Registro de la Propiedad fue canalizado por el Lcdo. Wilmer Morales Fonseca, quien también autorizó la Escritura de Compraventa.

En desacuerdo, Oriental Bank presentó otro Escrito de Recalificación. En primer lugar, cuestionó el cobro de aranceles con respecto al valor de los dos (2) embargos federales, los cuales, por disposición de ley, solo conllevan el pago de diez dólares ($10.00) para su cancelación. En segundo lugar, reiteró que los embargos a favor del Estado por concepto de contribuciones sobre ingresos repetían incorrectamente el principal de los años anteriores.

El 23 de febrero de 2021, el Registrador de la Propiedad informó a través de una misiva que tomó una anotación preventiva denegatoria con respecto al asiento presentado.

En consecuencia, Oriental Bank presentó un Recurso Gubernativo ante este Tribunal. En este, reafirmó que el Registrador erró al exigir el pago de aranceles por todos los embargos inscritos a favor del Estado. Argumentó que el Departamento de Hacienda presentó certificaciones de contribuciones sobre ingresos anualmente por cantidades que ya habían sido previamente anotadas, añadiendo solo la cantidad adeudada más reciente y los intereses, las multas y los recargos. Asimismo, reiteró que los embargos a favor del gobierno federal se cancelan por sólo diez dólares ($10.00).

Por su parte, el Registrador presentó una Moción solicitando desestimación por incumplimiento con Artículo 245 y Regla 245.1 de la Ley 210 conocida como Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico del 8 de diciembre de 2015. Por medio de esta, sostuvo que Oriental Bank no le entregó una copia física del

documento objeto del recurso dentro del término reglamentario para ello. Por consiguiente, razonó que el recurso no fue perfeccionado y procedía su desestimación.

En su Moción en cumplimiento con notificación y réplica a moción de desestimación, Oriental Bank rechazó que procediera la desestimación del recurso. Ello, por razón de que envió una copia certificada del documento mediante correo electrónico. Añadió que tal presentación cumple con el propósito de la ley, pues el Registrador cuenta con el documento objeto del recurso.

Finalmente, el Registrador presentó su Alegato del Recurrido. En primer lugar, señaló que el documento de cancelación se presentó inicialmente de forma errada como uno exento de pago de aranceles. Mas, con respecto al pago de aranceles por los gravámenes a favor del Gobierno federal, reconoció que estos solo pagan diez dólares ($10.00) por cada cancelación. En lo relacionado con los gravámenes a favor del Estado, indicó que su responsabilidad se limita a cumplir con la inscripción y a garantizar el cumplimiento de la ley, la cual exige el pago de los aranceles para la cancelación. En particular, afirmó que no le compete determinar si los embargos a favor del Estado duplican cuantías de años contributivos, pues para el cálculo de los derechos de inscripción solo se toman en cuenta los gravámenes inscritos.

Trabada así la controversia, y con el beneficio de la comparecencia de ambas partes, procedemos a resolver, no sin antes repasar el derecho aplicable a la controversia.

## II.

## A.

Como se sabe, los tribunales deben atender con prioridad los asuntos jurisdiccionales que son traídos a su atención. Fuentes Bonilla v. ELA et al., 200 DPR 364, 372 (2018). La razón para ello es que un tribunal sin jurisdicción está impedido de atender los méritos de la controversia. Villanueva v. Hernández Class, 128 DPR 618, 660 (1991).

De ordinario, este Tribunal posee jurisdicción para atender mediante un recurso gubernativo la calificación final de un Registrador de la Propiedad en la cual se deniega el asiento solicitado por el peticionario. Art. 3.002(h) de la Ley Núm. 201-2003, conocida como la Ley de la Judicatura de Puerto Rico de 2003, 4 LPRA sec. 24s; Regla 27 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B.

Sin embargo, en este caso, el Registrador sostiene que existe un impedimento al ejercicio de nuestra jurisdicción sobre la controversia, pues Oriental Bank falló en entregar una copia física del documento objeto de su petición. Ello, basado en el Art. 245 de la Ley Núm. 210-2015, conocida como Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, 30 LPRA sec. 6405,[5] y la Regla

---

[5]El precitado artículo dispone que:

> El notario, funcionario autorizado o el interesado, podrá radicar recurso gubernativo ante el Tribunal Supremo de Puerto Rico dentro del término improrrogable de veinte (20) días a partir de la notificación de la denegatoria, y simultáneamente notificará al Registrador con copia del escrito. Si

245.1 del Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 8814, 31 de agosto de 2016, págs. 58-59.[6] Según las disposiciones antes citadas, para perfeccionar un recurso gubernativo, la parte recurrente tiene veinte (20) días después de la denegatoria del Registrador para: (1) presentar una copia física del recurso gubernativo personalmente ante este Tribunal; (2) enviar al Registrador la copia digitalizada del recurso gubernativo a través del sistema de informática registral, y (3) entregar

---

el recurso es radicado por el notario o funcionario autorizado, lo hará por la vía electrónica del sistema de informática registral. Dentro de este mismo término, el notario o funcionario autorizado que radique el recurso está obligado a entregar la copia certificada del documento que fue presentado, en su caso, por la vía electrónica y que es objeto del recurso. De no cumplirse con este requisito, se entenderá que el notario o funcionario autorizado ha desistido y acepta como final la denegatoria de inscripción que le fue notificada.

[6]La regla antes mencionada establece que:

Toda notificación y envío de la copia del recurso gubernativo se hará por medio de la vía electrónica del sistema de informática registral como documento complementario del documento notificado. La copia del recurso gubernativo deberá contener el sello de radicación del Tribunal Supremo de Puerto Rico. […]
El recurso gubernativo y el aviso al Registrador tendrán que ser recibidos en el Registro en o antes de las 12:00 de la medianoche del último día del término correspondiente. El Registro no recibirá copia de recursos gubernativos personalmente, excepto la copia certificada original del documento que fue presentado digitalmente de conformidad con lo establecido en el Artículo 245 de la Ley, la que se entregará en la sección del Registro correspondiente.

al Registrador una copia certificada original del documento presentado digitalmente para ser calificado.

Recientemente, en <u>Firstbank Puerto Rico v. Registradora de la Propiedad</u>, 2021 TSPR 135, 208 DPR __ (2021), este Tribunal atendió tales disposiciones dentro del contexto análogo de una solicitud de desestimación por no presentar al Registrador la copia física, certificada y original del documento objeto del recurso. En atención al propósito tras la digitalización del procedimiento y al hecho de que el Registrador ya cuenta con el documento calificado objeto del recurso, se arribó a la conclusión de que tal requisito constituye una duplicidad innecesaria que mina la intención legislativa de hacer los procesos registrales más eficientes. De esta forma, en armonía con el resto de las disposiciones reglamentarias que promovían el uso de la tecnología para agilizar y facilitar los trámites registrales, establecimos que:

> [E]l Art. 245 y su correlativa Regla 245.1 del Reglamento no requieren la entrega de la copia física original de dicho documento en el Registro de la Propiedad, cuando la misma haya sido presentada electrónicamente junto a su certificación bajo el Art. 260. De igual forma, resolvemos que un Registrador podrá dar cumplimiento a lo requerido por la Regla 245.2 del Reglamento al presentar ante esta Curia una copia del documento que le fue presentado por la vía telemática para ser calificado. De esta forma logramos armonizar las distintas disposiciones de la Ley Hipotecaria, su reglamento y los propósitos consignados por la Asamblea Legislativa en la Exposición de Motivos. <u>Firstbank Puerto Rico v. Registradora de la Propiedad de Ponce</u>, supra.

Por consiguiente, en lo que concierne el caso ante nuestra consideración, toda vez que Oriental Bank presentó una copia digital para la calificación y, en consecuencia, el Registrador cuenta con una copia de tal documento, era innecesario que presentara una copia física del documento en cuestión. Por lo tanto, el recurso ante nuestra consideración fue perfeccionado conforme a derecho y no hay obstáculo jurisdiccional alguno que nos impida resolver esta controversia en los méritos.

**B.**

En nuestro ordenamiento, la facultad que define el rol del Registrador es la de calificar los documentos que son presentados ante el Registro de la Propiedad. Tal ejercicio consiste en examinar o comprobar la legalidad de aquello cuya inscripción en el Registro de la Propiedad se aspire. L.R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 3ra ed., San Juan, Jurídica Eds., 2012, pág. 275. Sin tal función, "no podría cumplirse el principio de legalidad que gobierna el sistema inmobiliario registral", el cual materializa "el propósito de que el Registro encierre solo actos válidos y derechos perfectos". United Surety v. Registradora, 192 DPR 187, 201 (2015); Popular Mortg. v. Registrador, 181 DPR 625, 631 (2011). A la luz de tal imperativo, se consideran válidos y perfectos aquellos títulos que reúnen los requisitos estatutarios o reglamentarios. Western Fed. Savs. Bank v. Registrador, 139 DPR 328, 332-333 (1995). Ahora bien, la facultad calificadora

del Registrador depende del tipo de documento que este tenga ante sí. Rigores v. Registrador, 165 DPR 710, 721 (2005). Entre los asuntos que el Registrador tiene que verificar al calificar un documento presentado en el Registro de la Propiedad se encuentra el pago de los derechos de inscripción correspondientes. San Gerónimo Caribe Project v. Registradora, 189 DPR 849, 861 (2013).

Según se adelantó, la controversia ante nuestra consideración surgió, precisamente, de los derechos de inscripción correspondientes a la cancelación de ciertos gravámenes.

En términos simples, la cancelación se refiere a "la operación registral que tiene por objeto dejar sin efecto y publicar la pérdida de vigencia de un asiento anterior". Popular Mortg. v. Registrador, supra, pág. 634 (citando a L.R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 2da ed., San Juan, Eds. Jurídica, 2002, pág. 473). Cónsono con esta definición, este Tribunal ha indicado que el fin de una cancelación es "ajustar el contenido del Registro a la realidad jurídica extraregistral, evitando así la subsistencia de situaciones jurídicas extinguidas". S.B. Pharmco P.R., Inc. v. Registrador, 148 DPR 336, 346 (1999).

Entre las instancias enumeradas en el Art. 52 de la Ley Núm. 210-2015, 30 LPRA sec. 6072, la cancelación de anotaciones preventivas procede cuando, como ocurrió en la controversia ante nos, "[j]udicialmente se ordene la cancelación de la anotación". Conforme lo dispone el Art. 51

de la Ley Núm. 210-2015, 30 LPRA sec. 6071, los asientos inscritos con posterioridad a la anotación de una demanda están sujetos a ser cancelados si el inmueble es objeto de una venta judicial, aun cuando tales títulos tengan fecha anterior a la anotación. En tal caso:

> La cancelación de los asientos posteriores a que se refiere este Artículo se hará libre de derechos, **excepto las hipotecas constituidas a favor del Estado Libre Asociado de Puerto Rico**, sus agencias, municipios y corporaciones públicas **los cuales pagarán aranceles conforme al principal de dichas hipotecas**. En todo caso el tribunal, mediante orden y mandamiento, señalará con particularidad los asientos a ser cancelados. (Negrillas suplidas). Íd.

Es decir, la cancelación de gravámenes inscritos a favor del Estado requiere el pago de ciertos aranceles. La Ley Núm. 91 de 30 de agosto de 1970, según enmendada, conocida como la Ley del Arancel de los Derechos que se han de Pagar por las Operaciones en el Registro de la Propiedad, 30 LPRA sec. 1767a et seq. (Ley de Aranceles), tiene el propósito de regular los derechos a pagarse por las operaciones del Registro de la Propiedad. Pagán Rodríguez v. Registradora, 177 DPR 522, 536-537 (2009). Tal estatuto es uno de naturaleza tributaria, por lo que estos aranceles tienen carácter de contribución. Díaz v. Registrador, 107 DPR 233, 238 (1978). De esta forma, bajo los preceptos que instituyó la ley precitada, se elimina la doble tributación y **se evita el cobro autómata de aranceles**, de modo que se fomente el cobro de derechos de aranceles por cada finca o derecho comprendido en la operación registral efectuada. Íd.

En fin, el Registrador tiene el deber de exigir el pago de aranceles siguiendo las normas aplicables. Correa Sánchez v. Registrador, 113 DPR 581, 591-592 (1982). En cuanto a esto, las disposiciones de la Ley de Aranceles, supra, fijan los derechos que han de pagarse cuando se solicita la inscripción, anotación, cancelación o liberación de un asiento en el Registro de la Propiedad. ESJ Towers, Inc. v. Registrador, 150 DPR 298, 311 (2000). **Es por ello que un Registrador no puede requerir derechos en exceso de lo dispuesto por ley**. Industrial Development Co. v. Registrador, 74 DPR 651, 653-654 (1953).

Ahora bien, según ha expuesto este Tribunal en ocasiones previas, la legislación contributiva no debe interpretarse de forma extensiva, sino que tal ejercicio debe ejecutarse de forma justa y según sus propios términos con el fin de que toda ambigüedad se interprete restrictivamente contra el Estado y a favor del ciudadano. B.B.C. Realty v. Secretario Hacienda, 166 DPR 498, 511-512 (2005); Talcott Inter-Amer. Corp. v. Registrador, 104 DPR 254, 262 (1975). Solo de esta forma se hace realidad su objetivo. Cooperativa de Ahorro y Crédito San Blas Illescas v. Purcell Soler, 201 DPR 544, 557 (2018).

En lo pertinente a este caso, el Art. 1(2)(l) de la Ley de Aranceles, supra, afirma de forma similar a la Ley Núm. 210-2015 que:

> En los casos de ejecución de hipotecas o embargos, la cancelación de los asientos posteriores se practicará libre del pago de aranceles, con

excepción de los gravámenes a favor del Estado Libre Asociado de Puerto Rico, sus agencias, corporaciones públicas y municipios. En estos casos, se pagará por la cuantía del gravamen que se cancela. 30 LPRA sec. 1767a.

En efecto, se desprende de toda reglamentación aplicable que "[l]a cancelación de asientos posteriores al crédito ejecutado consistentes en gravámenes o hipotecas constituidas a favor del Estado Libre Asociado de Puerto Rico, sus agencias, municipios y corporaciones públicas conlleva el pago de los aranceles correspondientes". Regla 116.1 del Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, supra.

Por otra parte, la Ley Núm. 209-2015, enmendó el Art. 1 de la Ley Núm. 43 de 9 de junio de 1956, según enmendada, conocida como la Ley para Eximir a los Estados Unidos de América y a sus Agencias del Pago de Aranceles, 30 LPRA sec. 1770a. En lo pertinente, dispuso que:

Se exime a los Estados Unidos de América y a sus agencias e instrumentalidades del pago de toda clase de impuestos, contribuciones o derechos prescritos por las leyes del Estado Libre Asociado de Puerto Rico para la autenticación de documentos ante notario o ante cualquier funcionario público y para la inscripción de documentos en los Registros de la Propiedad. Dicha exención aplicará solamente cuando le corresponda a los Estados Unidos de América y a sus agencias e instrumentalidades realizar el pago del arancel.

Por excepción, y conforme dispone la Sección 14.005 del "Uniform Federal Liens Registration Act", por las anotaciones de embargo se cobrará diez dólares ($10) por anotación en el Libro Auxiliar de Embargos Federales y diez dólares ($10) por anotación en el Libro de Inscripción de la Propiedad. **También se pagarán diez dólares ($10) por la cancelación de**

**las anotaciones en los libros mencionados.** (Negrillas suplidas).

Expuesto el derecho aplicable, procedemos a discutir su aplicación a esta controversia.

### III

En su comparecencia ante este Tribunal, Oriental Bank insiste en que la cuantía en aranceles exigida por el Registrador es errónea, en primer lugar, porque la cancelación de gravámenes a favor del Gobierno federal conlleva un pago específico de diez dólares ($10.00) por disposición legal. En segundo lugar, afirma que la legislación aplicable no tiene como finalidad el que la parte interesada en obtener una cancelación de un gravamen pague una cuantía incorrecta debido a un error en la inscripción de los embargos. Por consiguiente, sostiene que no debe estar sujeto a pagar múltiples veces la misma cantidad para cancelar los gravámenes a favor del Estado en contribución sobre ingresos, por lo que corresponde que solo se le exija el pago del embargo más reciente.

De entrada, es necesario atender lo relacionado a las cuantías exigidas en pago de aranceles por la cancelación de los embargos federales. Conforme se relató, sobre la propiedad pesan dos (2) embargos federales, a saber:

Embargo federal contra Fabio A. Román García presentado el 13 de mayo de 2016, por la suma de $523,059.13, asiento 2016-004697 al tomo Karibe.

Embargo federal contra Fabio A. Román García presentado el 28 de julio de 2016, por la suma de

$11,128.46, asiento 2016-007041-Fed al tomo Karibe.[7]

Según la <u>Carta de Notificación</u> emitida por el Registrador el 17 de septiembre de 2020, el primero de los embargos debía pagar $2,046.00 en derechos de inscripción para su cancelación y el segundo $24.00.[8]

No obstante, el derecho aplicable antes reseñado indica que solo se pagarán diez dólares ($10.00) por la cancelación de las anotaciones en los libros relacionados con los embargos federales. Es decir, Oriental Bank está en lo correcto al señalar que, al tratarse de dos (2) gravámenes inscritos a favor del Gobierno federal, corresponde un pago de veinte dólares ($20.00), más cuatro dólares ($4.00) adicionales por el acto propio de cancelación.[9] De hecho, así lo aceptó el Registrador en su comparecencia ante este Tribunal, por lo que se da por resuelto este asunto.

Ahora, procede adentrarnos en la controversia central del caso ante nuestra consideración. Según relatado, el Registrador consignó una anotación preventiva de denegatoria y requirió el pago de aranceles por la cancelación de ciertos embargos a favor del Estado, los cuales detalló de la siguiente forma:

> Embargo a favor del Estado Libre Asociado de Puerto Rico (Ley 12) contra Fabio A. Román García,

---

[7]Apéndice de <u>Recurso Gubernativo</u>, pág. 18.

[8]Íd.

[9]Según establece el Art. 1(2)(h) de la Ley de Aranceles, 30 LPRA sec. 1767a, la cancelación de un embargo en ejecución de sentencia pagará cuatro dólares ($4.00).

presentado el 21 de octubre de 2013, por la suma de $52,071.17, anotado el 21 de octubre al folio 6 libro 68 ELA bajo #70037 de orden. Este pagará $162.00 en derechos de inscripción.

Embargo a favor del Estado Libre Asociado de Puerto Rico (Ley 12) contra Fabio A. Román García, presentado el 22 de enero de 2014, por la suma de $216,716.47, anotado el 22 de enero de 2014, al folio 27 libro 68 ELA bajo #70122 de orden. Este pagará $818.00 en derechos de inscripción.

Embargo a favor del Estado Libre Asociado de Puerto Rico (Ley 12) contra Fabio A. Román García, presentado el 10 de septiembre de 2014, por la suma de $512,545.92, anotado el 10 de septiembre de 2014 al folio 122 libro 68 ELA bajo #70501 de orden. Este pagará $2,002.00 en derechos de inscripción.

Embargo a favor del Estado Libre Asociado de Puerto Rico (Ley 12) contra Fabio A. Román García, presentado el 10 de septiembre de 2014, por la suma de $175,988.94, anotado el 10 de septiembre de 2014, al folio 122 libro 68 ELA bajo #70502 de orden. Este pagará $654.00 en derechos de inscripción.

Embargo a favor del Estado Libre Asociado de Puerto Rico contra Fabio A. Román García, presentado el 1 de septiembre de 2016, por la suma de $798,377.01, anotado al tomo Karibe asiento 2016-008278-Est. Este pagará $3,146.00 en derechos de inscripción.

Embargo a favor del Estado Libre Asociado de Puerto Rico contra Fabio A. Román García, presentado el 9 de junio de 2017, por la suma de $1,607,506.05, anotado al tomo Karibe asiento 2017-005182-Est. Este pagará $6,382.00 en derechos de inscripción.[10]

---

[10]Apéndice de Recurso Gubernativo, pág. 18. En tal documento consta un embargo adicional a favor del Estado, mas no surge del recurso ante nuestra consideración que Oriental Bank cuestione su procedencia, a saber: "Embargo a favor del Estado Libre Asociado de Puerto Rico contra Fabio A. Román García, presentado el 9 de junio de 2017, por la suma de $2,281.36, anotado al tomo Karibe asiento 2016-008278-Est. Este pagará $6.00 en derechos de inscripción." Íd.

Según se desprende del expediente, tales embargos están relacionados con contribuciones sobre ingresos.[11] Al respecto, Oriental Bank arguye que solo debería pagar por la entrada más reciente de $1,607,506.34, pues esta engloba todas las cantidades previamente inscritas. Es decir, razona que cada nueva entrada añadía la cantidad anterior así sumada a la nueva, por lo que arguye que el efecto de exigir el pago por la cancelación de todos los embargos inscritos, cuando los asientos continuaron incluyendo las sumas anteriores de forma sucesiva, sería obligarle a pagar múltiples veces por la cancelación de la misma cantidad. En fin, Oriental Bank no cuestiona la exigencia de un pago bajo el Art. 1(2)(l) de la Ley de Aranceles, supra, por la cancelación de los gravámenes a favor del Estado, sino la forma en la que, en este caso, se procedió a cobrar la cuantía bajo tal disposición.

Por su parte, el Registrador no presenta argumento alguno a favor de la cuantía exigida o con respecto a la corrección de los asientos a ser cancelados. En su alegato, este se limita a aducir que discernir entre las cantidades adeudadas o las entradas en el Registro de la Propiedad no forma parte de sus funciones. Ello, pues afirma que su rol está restringido a exigir el pago para la cancelación basado en el valor que aparece inscrito, sin más.

En ocasiones anteriores, este Tribunal ha remarcado la capacidad limitada de los Registradores en cuanto a su

---

[11] Íd., págs. 3-6.

facultad calificadora. Ahora bien, tales lineamientos, así discutidos recientemente en Adorno v. Vigo, 207 DPR 361 (2021), van dirigidos a su capacidad para entender títulos inscribibles de naturaleza notarial, judicial o administrativa. Dicho de otro modo, nuestros pronunciamientos previos con respecto a los márgenes de la capacidad de los registradores no impactan los hechos que hoy tiene ante su consideración este Tribunal, ni mucho menos es óbice para que no se observen las normas arancelarias y la hermenéutica aplicable. Veamos.

La controversia que hoy examinamos versa específicamente sobre la forma en la que procede un cobro de aranceles cuando, de las certificaciones en las cuales se fundamentan ciertas entradas, surge una inconsistencia que podría resultar en el pago en exceso por la parte interesada. A modo de ejemplo, Oriental Bank presenta, en apoyo a su contención, dos (2) Certificaciones de embargo correspondientes a los años 2016 y 2017. En estas, se desglosan ciertas cantidades adeudadas como principal por periodos contributivos entre el 2010 al 2015 que, junto con determinadas multas, intereses y recargos, aparentan sumarse para alcanzar las cuantías de $798,377.01 en el 2016 y $1,067,506.05 para el 2017. Tales sumas contrastan con dos (2) de los embargos a favor del Estado. Ello, en efecto, parece representar, por lo menos en dos (2) instancias, la suma de todas las cuantías del principal previamente acumuladas más la deuda del periodo contributivo más reciente, cuyo total fue entonces anotado en el Registro

de la Propiedad.[12] Sin embargo, toda vez que Oriental Bank indica que ello se repite en embargos correspondientes a años anteriores, este Tribunal no está en posición de determinar inequívocamente que ello se extiende a todos los gravámenes a favor del Estado por contribuciones sobre ingresos. Mas, con documentación adicional, el Registrador sí podría estar en posición para determinarlo.

No se puede perder de vista que del derecho antes repasado se desprende la ausencia de un mandato expreso sobre cómo canalizar la instrucción de cobro de aranceles por la cancelación de un embargo a favor del Estado ante hechos como los de este caso. Entiéndase, nos encontramos ante un vacío en nuestro ordenamiento con respecto a la instrumentación de un proceso de cobro de aranceles ante circunstancias en las que se disputan las cantidades a cobrarse por, según se alega, un error en la manera en la que se hicieron constar los embargos en el Registro de la Propiedad. No obstante, tal vacío no justifica el cruzarse de brazos y forzar un pago que bien podría constituir un cobro en exceso a lo ordenado por la ley. Por el contrario, según lo exige nuestro ordenamiento, hay que ejercer el cobro de aranceles de forma justa y conforme a los términos del estatuto que rige. Así, de haber alguna ambigüedad en este, sus disposiciones tienen que interpretarse de forma restrictiva en contra del Estado y a favor del ciudadano.

---

[12]Apéndice de _Recurso Gubernativo_, págs. 16-17.

Si bien, como el Registrador en cuestión afirma, su responsabilidad se dirige a garantizar el pago de los aranceles correspondientes previo a instrumentar la cancelación solicitada, tal ejercicio no puede producirse de manera maquinal e irreflexiva. Recuérdese, conforme se indicó previamente, la Ley de Aranceles, *supra*, fue creada con el propósito específico de evitar la doble tributación y su cobro autómata. Ello obedece al principio de que un Registrador de la Propiedad no puede requerir derechos en exceso de lo dispuesto por ley.

Por consiguiente, resolvemos que el Registrador de la Propiedad, al ser confrontado con un planteamiento en torno a un posible exceso en la tributación requerida para la cancelación de un gravamen, tiene que examinarlo y no exigir el pago de forma mecánica. De lo contrario, ello puede resultar en el cobro de derechos en exceso a los dispuestos por la ley. Es esta interpretación la que armoniza nuestros pronunciamientos previos y, a su vez, llena el vacío en la práctica del cobro de aranceles para una solución más justa. En el caso específico ante nuestra consideración, corresponde al Registrador atender la incongruencia entre los embargos y las *Certificaciones de embargos* antes reseñadas, y a Oriental Bank el proveer la documentación necesaria para que el Registrador pueda ejecutar tal ejercicio con todos los embargos cuya cuantía en aranceles fue objetada.

## IV

Por los fundamentos antes expresados, se revoca la

calificación final de Anotación Preventiva Denegatoria del Registrador de la Propiedad. Por consiguiente, se devuelve el asunto a la atención del Registrador de la Propiedad para la realización de procedimientos ulteriores consistentes con esta Opinión.

Se dictará sentencia de conformidad.


Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Oriental Bank<br><br>Recurrente<br><br>v.<br><br>Registrador de la Propiedad de Arecibo, Hon. Frank Quiñones Vigo<br><br>Recurrido | RG-2021-0001 |  |

Sentencia

En San Juan, Puerto Rico, a 12 de mayo de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la calificación final de Anotación Preventiva Denegatoria del Registrador de la Propiedad. Por consiguiente, se devuelve el asunto a la atención del Registrador de la Propiedad para la realización de procedimientos ulteriores consistentes con esta Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo